## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                                                  No. 5:21-cr-30-BJB

RICHARD T. HALL                                            DEFENDANT

* * * * *

### MEMORANDUM OPINION & ORDER

Richard Hall is serving a 120-month sentence for distribution of methamphetamine. Citing daily pain due to a 2021 car accident and the poor health of his in-laws, Hall seeks compassionate release through two separate motions under 18 U.S.C. § 3582(c)(1)(A). As to the first motion, the Government correctly notes that Hall has not exhausted his administrative remedies before coming to court, so his motion fails. As to the second, Hall offers an explanation for his lack of exhaustion, but still hasn't shown that extraordinary and compelling reasons warrant his early release. And granting the motion would be inconsistent with the sentencing factors that Congress has directed judges to consider. So for these reasons (which would apply equally to the first motion), the Court denies Hall's second motion as well.[1]

### I.

A grand jury indicted Hall in September 2021. He pleaded guilty to one count of distribution of methamphetamine, agreeing with the prosecution that a sentence of 120 months would be proper. This sentence fell considerably below the (advisory) sentencing guidelines range of 188 to 235 months based on Hall's offense and criminal history. *See* FED. R. CRIM. P. 11(c)(1)(C); DN 19 (plea agreement). The Pre-Sentencing Report explained, without objection, that Hall was responsible for

---

[1] Hall also asked the Court to appoint counsel to represent him. Second Motion (DN 48) at 6. The Constitution doesn't provide a right to appointed counsel in a civil case. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993); *United States v. Gordon*, No. 23-3188, 2024 WL 1005772, at *3 (6th Cir. Mar. 4, 2024) (denying counsel under *Lavado* in the compassionate-release context). Courts may exercise discretion to appoint counsel if "exceptional circumstances" exist. *Lavado*, 992 F.2d at 606 (citation omitted). That decision depends on whether litigants are able to represent themselves given the "complexity of the factual and legal issues involved." *Id.* (citation omitted). Because these motions are not factually or legally complex, appointed counsel would not be necessary or particularly helpful. So the Court denies the request.

distributing more than 2,500 grams of methamphetamine and committed the distribution offense while under a previous criminal-justice sentence for 6 separate felony convictions.  *See* PSR (DN 24) ¶ 27.  The Court ultimately accepted Hall's plea agreement and sentenced him to 120 months in prison.  *See* Judgment (DN 26) at 2.  The Bureau of Prisons projects his release date to be December 7, 2031.  *See* Find an Inmate, BOP, https://www.bop.gov/inmateloc/ (last visited June 11, 2024).

This order addresses two requests for compassionate release.  The first motion does not indicate that Hall applied to the warden or any other official for compassionate release before filing in court.  Gov't Response (DN 33) at 2.  This motion emphasizes that he has been in constant pain stemming from a car wreck that broke both his neck and back shortly before he went to prison in 2022.  *See* First Motion for Compassionate Release (DN 29) at 1.  His wife's parents "are in bad health," they "don't have much longer to live," and his wife could use his help caring for them.  First Motion at 1.[2]  This conviction, he argues, was his first drug charge and will be his last.  First Motion at 2.

The Government apparently agrees that Hall suffered the injury he describes.  But it maintains that BOP medical personnel are providing appropriate medical care.  Response at 3–4.  Based on the apparent lack of exhaustion of administrative remedies, the absence of extraordinary and compelling circumstances, and the weight of the relevant sentencing factors under § 3553(a), the Government urges the Court to deny the first motion for early release.

The Court hasn't asked for the Government's position on the second motion, which covers largely the same arguments for release as the first—though it explains more fully why Hall hasn't exhausted his remedies.  This request asserts that Hall didn't ask the warden before requesting release because his facility does not currently have a warden and he "could not get staff to help" him submit a release request.  Second Motion for Compassionate Release (DN 48) at 3.  Rather than reiterating his health concerns, Hall focuses on the need to help his wife care for her mother.  *Id.* at 5.

## II.

A court "may not modify a term of imprisonment once it has been imposed" in response to a motion by the defendant unless the defendant has attempted to exhaust administrative remedies.  *See* § 3582(c)(1)(A).  The defendant must "fully exhaus[t] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait "30 days from the receipt of such a request by the warden of the defendant's facility."  *Id.*; *see United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (describing statutory changes to exhaustion process).

---

[2] Between the filing of the two motions for compassionate release, Hall's father-in-law unfortunately passed away.  Second Motion (DN 48) at 5.

Before 2018, only the Bureau of Prisons could move for compassionate release. *See United States v. Taylor*, No. 20-3642, 2020 WL 7383648, at *1 (6th Cir. Nov. 9, 2020). The First Step Act "amended § 3582(c) to allow prisoners to move for compassionate release on their own behalf." *United States v. Alam*, 960 F.3d 831, 834–35 (6th Cir. 2020). But they may do so only after requesting compassionate release from the BOP and "'fully exhaust[ing] all administrative rights to appeal' with the prison or wait[ing] 30 days after [their] first request to the prison." *Id.* at 833–34 (quoting § 3582(c)(1)(A)). This exhaustion requirement is waivable, not jurisdictional—but becomes "mandatory" if the Government invokes it. *Taylor*, 2020 WL 7383648, at *2 (quotations omitted).

As the Government points out, Hall's first motion doesn't say anything about exhaustion. Nothing in the record up to that point indicates that he has exhausted his administrative remedies, filed a request with the warden, or waited 30 days after doing so. *See* Response at 2. Because this step is mandatory if the Government insists on it, the Court must deny Hall's first motion for this reason alone. *Taylor*, 2020 WL 7383648, at *2 (affirming denial of compassionate release and refusing to "carve out equitable exceptions" to the exhaustion requirement).

Hall's second motion, by contrast, says that his prison has "not had a warden … in months" and that he "could not get staff to help with" his compassionate release request. DN 48 at 3. But exhaustion is an "unyielding procedural requirement," and "a court may not grant relief without complying with" it. *Alam*, 960 F.3d at 834 (cleaned up). The Sixth Circuit has rejected attempts to "innovate an equitable exception to this requirement to account for irreparable harm or futility." *See id.* at 835. When "Congress sets the rules" with a mandatory exhaustion requirement, "courts have a role in creating exceptions only if Congress wants them to." *Ross v. Blake*, 578 U.S. 632, 639 (2016). Congress doesn't appear to have provided any exception that would fit this situation, and Hall hasn't identified one. *See id.*; *Alam*, 960 F.3d at 835. And even if this Court identified a basis for excusing exhaustion, this second motion still fails to justify compassionate release for the reasons laid out below.

### III.

Hall hasn't established that the facts and law warrant his early release. After addressing exhaustion, district courts apply a "three-step inquiry" in considering a compassionate-release motion filed under § 3582. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted). Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *McCall*, 56 F.4th at 1054 (quotations omitted). Those factors include the prisoner's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of

his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)). District courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking. *Elias*, 984 F.3d at 519.

The Sentencing Commission recently amended the compassionate-release policy statement to describe six categories of extraordinary and compelling reasons that individually, or in combination, may support compassionate release. The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury;" (5) "other reasons" similar to those in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b). The applicable categories for Hall in the amended policy statement are the medical and family circumstances. § 1B1.13(b)(1), (3).

### A. No Extraordinary and Compelling Reasons Warrant Early Release

Both of Hall's compassionate-release requests raise two main points: (1) his back and neck injuries stemming from a 2021 car accident cause him constant pain and (2) his wife needs his help caring for her mother, whom (Hall says) is in poor health. First Motion at 1; Second Motion at 5. In his first motion, Hall also seems to raise an argument based on rehabilitation: the offense was his first drug charge and will be his last. First Motion at 2. Accepting all of Hall's assertions as true, these reasons, whether analyzed independently or together, don't justify an early release.

First, medical needs generally qualify as an "extraordinary and compelling" reason only if they substantially diminish a defendant's ability to provide "self-care" in prison. *See United States v. Ruffin*, 978 F.3d 1000, 1002–03 (6th Cir. 2020) (noting § 1B1.13 cmt. n.1(A)(ii)). Hall's motion addresses his pain but not any limited function. His conditions do not resemble the "extraordinary and compelling" medical needs the Sentencing Guidelines has listed to illustrate this requirement: a "terminal illness," a "serious functional or cognitive impairment," "a serious physical or medical condition … from which he or she is not expected to recover," or a need for "long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1)(A)–(C). The key is that the medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13(b)(1)(B). But as the Government notes, nothing about Hall's request indicates he is suffering from extraordinary pain, and nothing in his request suggests he could obtain more appropriate treatment if released. Response at 3–4.

Second, although the Sentencing Guidelines provide that family circumstances can support compassionate release, Hall has not shown the level of familial need contemplated in § 1B1.13(b)(3). By his own account, his wife currently cares for her mother, so Hall is not "the only available caregiver" able to look after her. § 1B1.13(b)(3)(D). In addition to Hall's wife, the PSR indicates that her three adult

4

children nearby could presumably assist in the care of their grandmother if Hall's wife needs additional help. *See* PSR ¶ 81.

Finally, even accepting Hall's apparent rehabilitation as true, "[r]ehabilitation … is not by itself extraordinary and compelling." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). While the Court applauds his efforts to help his wife care for her mother, these efforts do not render his situation extraordinary compared to the rehabilitation demonstrated by many federal prisoners.

## B. Change in the Sentencing Analysis

Even if Hall had provided an extraordinary and compelling justification under § 3582(c), his release would still be inappropriate under the relevant sentencing considerations set out by Congress. The law requires prisoners to make a "compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Sherwood*, 986 F.3d at 954. The factors include the circumstances of the crime, the character and history of the defendant, and the sentences available. § 3553(a)(1), (3). The Court must also consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). And the sentence must "afford adequate deterrence to criminal conduct; … protect the public from further crimes …; and … provide the defendant with needed … correctional treatment in the most effective manner." § 3553(a)(2)(B)–(D).

The sentencing judge imposed a sentence of 120 months in prison because, among other things, the record indicated that Hall sold significant amounts of methamphetamine and illegally possessed multiple weapons. *See* PSR ¶¶ 11–22. And Hall's extensive criminal history is no less relevant now than it was at the time of his sentencing. *See* PSR ¶¶ 38–77. Although Hall argues this was his first drug charge, *see* First Motion at 2, the criminal history accepted by the parties and the sentencing judge undermine that assertion. His recidivism undermines the notion that this offense was an aberration. The community-safety factor is likewise relevant here because "drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). The risks posed to the community by drug trafficking caution against a sentence reduction under § 3553(a). *Id.*; *United States v. Alford*, No. 5:14-cr-77, 2021 WL 1511643, at *3 (E.D. Ky. Apr. 9, 2021) (denying compassionate release in part because the danger of drug trafficking militated against sentence reduction).

Although Hall insists he will never again incur another drug charge, this of course does not outweigh the need to punish and deter criminal conduct to promote respect for the law and protect the public—the reasons Hall received this sentence in the first place. Promises of remorse and rehabilitation alone do not open the doors to early release, particularly given the dangerousness of selling drugs in the quantities Hall admitted to. *Cf. United States v. Sapp*, No. 14-cr-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) (record of good behavior and assistance to authorities did not amount to "extraordinary and compelling reasons"). And district courts must

consider, among other things, the need for a sentence to reflect the seriousness of the offense and protect the public from further crimes committed by the defendant. *See United States v. Maxwell*, 991 F.3d 685, 693 (6th Cir. 2021). Hall's original sentence did. And no reasons raised now demonstrate that has changed.

V.

Hall has also asked this Court on three separate occasions to apply credit for his prior custody to his sentence. *See, e.g.*, DN 44 (motion for custody credit) ("I ask you to please award me the 24 months jail credit I did before I was turned over to the federal system.") (cleaned up); *see also* DNs 30 (motion for jail credit), 45 (motion for state-time credit). District courts lack authority to award relief of this sort; such requests must be considered by the Attorney General through the BOP. *United States v. Wilson*, 503 U.S. 329, 334–35 (1992); *United States v. Westmoreland*, 974 F.2d 736, 737 (6th Cir. 1992).

And if Hall means to ask the Court to adjust his sentence based on past time served, that is also not possible. A court generally may not modify a prison sentence by revisiting a final judgment years after its entry. *See United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) ("The authority of a district court to resentence a defendant is limited by statute. Specifically, 18 U.S.C. § 3582(c)(1)(B) provides in relevant part that a 'court may not modify a term of imprisonment once it has been imposed except ... to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.'") (citation omitted). These motions for credit do not seek a modification under Rule 35 or any statute. *See* FED. R. CRIM. P. 35(a) ("Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."); *see also United States v. Zabawa*, 134 F. App'x 60, 67 (6th Cir. 2005) (Rule 35(a)'s time period is jurisdictional).

Because this Court lacks the authority to grant Hall's motions (DNs 30, 44, & 45), the Court denies them.

ORDER

The Court denies Hall's motions for compassionate release (DNs 29 & 48), his motions for custody credit (DNs 30, 44, & 45), and his request for appointed counsel (DN 48).

Benjamin Beaton, District Judge

United States District Court

June 12, 2024